Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5690 | **DATE** | 5/9/2002 |
| **CASE TITLE** | Rodger Pierce vs. United Parcel Service, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff Pierce's motion for appointment of counsel [8-1] is denied without prejudice. Defendant UPS's motion to dismiss [13-1] is granted without prejudice. As explained in the attached opinion, Pierce may move again for appointment of counsel or file an amended complaint within 30 days after the entry of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| ✓ | Notified counsel by telephone. | | | MAY 15 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| RJ | | courtroom deputy's initials | 02 MAY 14 PM 6:32 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RODGER PIERCE, | ) | |
| | ) | DOCKETED |
| Plaintiff, | ) Case No. 01 C 5690 | MAY 1 5 2002 |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, et al., | ) Judge Joan B. Gottschall | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Rodger Pierce, a *pro se* plaintiff, claims that he was discriminated against on the basis of a disability. Presently before the court are Pierce's motion for appointment of counsel and defendant United Parcel Service, Inc.'s ("UPS") motion to dismiss for failure to state a claim. As explained below, Pierce's motion is denied and UPS's motion is granted.

## I. Background

For present purposes the court assumes the truth of the well-pleaded allegations in the complaint and draws all reasonable inferences in favor of Pierce. Pierce was fired from his part-time job at UPS on June 22, 2000 after 12½ years of employment. The events leading up to the termination are as follows. While Pierce was entering the workplace he was picked out to be searched, even though employees are never searched when entering (as opposed to exiting) the premises. The guards found and confiscated a prescription bottle containing prescribed medicine. A few hours later, Pierce was called into the management office, falsely accused of having been found with "a marijuana substance," and terminated on this false ground. According to Pierce, the standard procedure when stolen or illegal items are found during exit searches of employees is to immediately escort the employee to UPS management, and an employee found



with an illegal substance is offered treatment, not termination. Pierce also claims that during the same week he was fired, UPS, by deceit, coerced plaintiff to sign a letter of retirement to prevent plaintiff from collecting unemployment benefits. UPS also is alleged to have hidden a book wherein Pierce could have signed up for promotion to full-time employment. Finally, he claims that the Teamsters misled him by telephoning him and falsely claiming that the court date had been changed. In addition to UPS and Teamsters Local 705, Pierce names as defendants Gary Landum, Ed Banish, and Brian Doughrty.

As an exhibit to his complaint, Pierce attaches the EEOC charge he filed on January 25, 2001. In the charge, Pierce alleges that UPS violated the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*, by terminating him when he was eligible for full-time employment. The charge also states that UPS knew that Pierce had a disability, that he was taking medication for the disability, and that UPS discriminated against him because of the disability. It is unclear from the complaint whether the EEOC has issued a right-to-sue notice. Pierce checked both the yes and no boxes regarding this issue on his standard form complaint, and claims to have received the notice on the same day he filed the charge. No right-to-sue notice is attached to the complaint, despite the explicit instruction on the form that such a notice should be so attached.

Along with his complaint, Pierce filed an application to proceed *in forma pauperis* and a motion for appointment of counsel on July 25, 2001. The application was missing information concerning Pierce's employment history; the motion was missing information concerning Pierce's attempts to retain counsel. The court denied the application and motion due to these omissions and advised Pierce either to submit completed forms by August 24, 2001 or to pay the

2

$150 filing fee by September 7, 2001. On September 6, 2001, Pierce paid the filing fee and filed a new motion for appointment of counsel. As before, the motion was devoid of any indication that Pierce has made any attempts on his own to retain an attorney. The court denied the motion without prejudice, explaining that it would reconsider the counsel appointment question after the defendants appeared. UPS subsequently filed its motion to dismiss. Pierce filed no response.

## II. Analysis

"A trial court must rule on a request for appointed counsel before ruling on a summary judgment motion or a motion to dismiss." *Brown-Bey v. United States*, 720 F.2d 467, 471 (7th Cir. 1983).

### A. Appointment of Counsel

The ADA incorporates the powers, remedies, and procedures set forth in Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a). In relevant part, Title VII provides:

> Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security.

42 U.S.C. § 2000e-5(f)(1). The appointed counsel and *in forma pauperis* issues are independent under this provision, so payment of the filing fee does not preclude appointment of counsel. *See Bradshaw v. Zoological Soc'y of San Diego*, 662 F.2d 1301, 1319 (9th Cir. 1981) ("A lesser showing of indigency is required to satisfy the test for appointment of counsel."). In deciding whether to appoint counsel, the court weighs three factors: "the merits of the plaintiff's claim, the plaintiff's diligence in attempting to obtain a lawyer, and the plaintiff's financial ability to retain counsel." *Jones v. WFYR Radio/RKO Gen.*, 626 F.2d 576, 577 (7th Cir. 1980), *overruled on*

3

*other grounds, Randle v. Victor Welding Supply Co.*, 664 F.2d 1064 (7th Cir. 1981). A fourth factor to be considered is whether the plaintiff appears competent to try the case himself. *Mell v. Human Dev. Ctr.*, No. 99 C 6714, 2000 U.S. Dist. LEXIS 6749, at *3 (N.D. Ill. Mar. 22, 2000); *see also Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993) (same, under general counsel appointment statute, 28 U.S.C. § 1915). Although any one of these factors may be decisive in a particular case, a complete lack of merit is a bar to appointment of counsel. *Darden v. Illinois Bell Tel. Co.*, 797 F.2d 497, 501 (7th Cir. 1986) ("[I]f a discrimination claim lacks merit, counsel will not be appointed regardless of the plaintiff's diligence in seeking representation or lack of financial means."); *cf. Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir. 1981) (per curiam) (requiring party seeking appointed counsel under § 1915 to present a colorable claim).

In the case at bar, it appears that Pierce is unable to pay for counsel. His application to proceed without payment of fees states that he is unemployed, that his only source of income is "asking individuals for spare change," and that he had only $300 in savings and no real estate or other property of value. Pierce last affirmed the accuracy of this application in September 2001. His financial situation may have substantially improved since that time.

The second factor, Pierce's diligence in seeking private counsel, is even more difficult to evaluate. Rather than describing his efforts to hire an attorney when prompted by the standard form, Pierce submitted the following statement:

> I was wrongfully terminated from my employment based on a disability. and after which have encured numerous head injuries which have resulted in my having Chronic Post Concussion Syndrome. have applied for perminate disability This has resulted in a lack on consentration. Also–find that I have the assistane of a friend to file these papers both finincially & emotional support. Also I have waited until final day of deadline as I received death

4

threats on my answering machine

Nothing in this statement suggests that Pierce has actually attempted to retain counsel, but it suggests that circumstances—his disability and fear of reprisals—prevented him from making such efforts. *Cf. Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992) (requiring party seeking appointed counsel under § 1915 to have made "reasonable attempts to retain counsel and [be] unsuccessful *or* [have been] effectively precluded from making such efforts") (emphasis added). The inscrutability of Pierce's statement itself provides some support for the notion that Pierce is not capable on his own of effectively seeking assistance from the bar. An alternative interpretation is that Pierce simply did not realize that he was expected to make some effort on his own to obtain counsel before seeking appointed counsel from the court.

This statement, in combination with Pierce's other miscues in these proceedings, strongly suggests that he is unable to handle this litigation on his own. *See Merritt v. Faulkner*, 697 F.2d 761, 765 (7th Cir. 1983) (holding that a blind prisoner was not capable of representing himself because of his disability and the complexity of the medical issues involved in the case). Despite the clear instructions in the standard form, Pierce failed to attach a copy of the EEOC right-to-sue notice. His application to proceed *in forma pauperis* was missing information about his employment history. Rather than simply correcting this rather minor deficiency as the court suggested, Pierce paid the $150 filing fee (presumably out of the $300 savings he had listed as his only asset). Pierce's second motion for appointment of counsel was even less complete than his first, and Pierce did not respond at all to UPS's motion to dismiss. On the other hand, Pierce submitted a detailed and comprehensible narrative of the facts surrounding his termination.

Finally, although the court cannot rule out the possibility that Pierce has at least one

5

meritorious claim, the actual merits of his claim are nearly impossible to evaluate. To succeed on a discrimination claim under the ADA, Pierce will have to show that: (1) he was disabled within the meaning of the ADA; (2) he was able to perform the essential functions of the job; and (3) he suffered an adverse employment action because of the alleged disability. *Leisen v. City of Shelbyville*, 153 F.3d 805, 807 (7th Cir. 1998). Pierce alleges that he was terminated because of a disability. Termination is obviously an adverse employment action. One could reasonably infer from the fact that Pierce had held his position for 12½ years that he was able to perform its essential functions. Hence, the critical issue is the disability. In his complaint, Pierce provides no indication as to what his alleged disability might be.[1] This mandates dismissal of Pierce's complaint (as explained below), but the merits threshold for appointment of counsel requires less than notice pleading. *See Brown-Bey*, 720 F.2d at 471 ("[I]f the claim has no merit in fact *and law*, the remaining factors need not be considered and the request for appointment of counsel may be denied.") (emphasis added); *cf. Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996) (finding that plaintiff presented colorable claim, then affirming the district court's dismissal of the claim under Rule 12(b)(6)). (If the standards were the same, a *pro se* plaintiff could never obtain assistance in drafting a complaint.) That Pierce's complaint does not give the defendant enough information to mount its defense does not necessarily mean that his claims lack merit. Pierce has sketched a potentially viable legal theory. To be sure, there is a gaping factual hole, but it is impossible to rule out the possibility that the hole will ultimately be filled. It is also essentially impossible for this court to assess the merits of Pierce's claim. His

---

[1] Pierce states in his motion for appointment of counsel that the head injuries which produced his chronic post-concussion syndrome occurred *after* his termination, so that new disability cannot have been the reason he was fired.

6

failure to name a specific disability could very well reflect the fact that he did not have one.

Weighing these factors against one another, this court concludes that appointment of counsel at this time would be premature. Pierce's claim may be colorable, but its merits are uncertain. His extreme indigency and apparent difficulty in presenting his claim militate in favor of appointment of counsel, but he describes no attempts to secure counsel on his own. This last factor especially looms large because, given that Pierce seeks substantial money damages, a contingent-fee arrangement would appear to be a real possibility. *See Farmer v. Haas*, 990 F.2d 319, 321 (7th Cir. 1993). Before this court will appoint counsel, Pierce must do three things: (1) affirm that his financial situation has not substantially improved since September 2001; (2) tell the court what disability he believes motivated his termination; and (3) describe in some detail his attempts to retain private counsel or how circumstances prevented him from making such efforts. In the meantime, the court denies the motion for appointment of counsel without prejudice.

B. Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test the merits of plaintiff's claims, but instead tests only the legal sufficiency of the complaint. *Pickerel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, (1984). Consistency in this context means more than logical possibility. Because the complaint must "provide the defendant with fair notice of the claim," *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999), the court cannot deny a motion to dismiss based on hypothetical facts

7

the relevance of which a defendant could not reasonably be expected to have discerned from the complaint. *Cf. Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir. 1984) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. 1981)). Pleading standards are relaxed for a *pro se* litigant, and the court considers all of the materials filed, not just the complaint. *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992).

Pierce pursues this action under the following provision of the ADA:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). An individual is "qualified" if he is able, with or without reasonable accommodation, to perform the essential functions of the relevant job. *Id.* § 12111(8). The term "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id.* § 12102(2). A record of such an impairment or being regarded as having such an impairment also qualify. *Id.* Examples of major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Current use of illegal drugs does not count as a disability. *Id.* § 1630.3(a).

UPS argues that the complaint should be dismissed because Pierce fails to plead:

> (i) the disability from which he allegedly suffers; (ii) the major life activity which the disability limits; (iii) the position to which he was allegedly denied a promotion; (iv) [that] he was able to perform the essential functions of any specific positions; or even (v) *that his alleged disability was the reason he was terminated and/or did not receive the promotion*.

(Def.'s Mem. at 4 (emphasis in original).)

Most of these arguments go nowhere. The emphasized point is especially weak. Pierce alleges that the defendants discriminated against him "because of" his disability and, three paragraphs later, that the defendants terminated his employment and failed to promote him. (Compl. ¶¶ 9, 12.) Perhaps UPS would have preferred a single sentence or paragraph, but it is perfectly obvious that the two allegations are connected. The third argument is similarly unconvincing. Pierce alleges that he was denied was a promotion from part-time to full-time status. The fact that his job-title may have remained unchanged after the increase in hours does nothing to undermine Pierce's claim. *See, e.g., Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (recognizing employment discrimination claim for denial of promotion to full-time status). The second argument fails for a different reason: "so long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading." *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001); *see also Duda v. Bd. of Educ.*, 133 F.3d 1054, 1059 (7th Cir. 1998) (finding sufficient an allegation of manic depression, without any mention of specific major life activity affected).

The fourth argument is better, but probably still a loser. It is true that Pierce does not specifically allege that he was able to perform the essential functions of his job, either on a full- or part-time basis. On the other hand, one could infer that Pierce was qualified from the fact that

he worked in the position for 12½ years. In light of Pierce's *pro se* status, the court would probably not dismiss the complaint on the basis of this deficiency alone. Dismissal of Pierce's complaint is required for another reason, however, so the court need not (and does not) decide the issue.

The critical defect here is Pierce's failure to identify the disability he alleges motivated the defendants. Without this information, UPS does not have sufficient notice of the claim against it. *Johnson v. Lehigh County*, No. 00-1670, 2000 U.S. Dist. LEXIS 9871, at *4-5 (E.D. Pa. July 12, 2000) (dismissing ADA claim for failure to specify disability); *McCann v. Catholic Health Initiative*, No. 98-CV-1919, 1998 U.S. Dist. LEXIS 14011, at *5 (E.D. Pa. Sept. 8, 1998) (same); *Abbasi v. Herzfeld & Rubin, P.C.*, 863 F. Supp. 144, 146 (S.D.N.Y. 1994) (same); *see also J.H. Routh*, 246 F.3d at 854. As noted above, the only specific disability that appears anywhere in Pierce's filings is chronic post-concussion syndrome, which he states resulted from events that occurred *after* his termination. The pleading requirements for a *pro se* plaintiff are lenient, but do not countenance omitting the disability from a disability discrimination claim. *Super v. Price Waterhouse*, No. 94 Civ. 7466, 1995 U.S. Dist. LEXIS 12034, at *4-5 (S.D.N.Y. Aug. 21, 1995) (dismissing *pro se* complaint for failure to specify disability). Pierce's complaint is therefore dismissed without prejudice.

Because the dismissal is without prejudice, it is useful to consider UPS's alternative argument that Pierce's promotion claim is barred because it did not appear in the EEOC charge. In general, a plaintiff alleging employment discrimination may not bring claims in a lawsuit that were not included in his EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule serves two purposes: (1) permitting the EEOC to investigate claims, so that

there will be an opportunity before the plaintiff files suit "to settle the dispute through conference, conciliation and persuasion"; and (2) giving the employer "some warning of the conduct about which the employee is aggrieved." *Id.* Nevertheless, a plaintiff need not allege in his EEOC charge each and every fact underlying each claim in his complaint. *Id.* Rather, all claims set forth in a complaint are cognizable that are "like or reasonably related to the allegations of the charge" and can reasonably be expected to grow out of such allegations. *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc) (citation omitted)). "The standard is a liberal one in order to effectuate the remedial purposes of [federal employment discrimination law], which itself depends on lay persons, often unschooled, to enforce its provisions." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985).

Here, Pierce stated in his EEOC charge that "[w]hen I was eligible for full-time employment in June or July, 2000, [UPS] terminated me." UPS's claim that "[n]othing in this allegation alerts the reader that Pierce was also alleging that he was denied a promotion *to an unidentified position*" misses the point. (Def.'s Mem. at 6 (emphasis added).) Pierce is not claiming that he was denied a promotion to an unidentified position; rather, Pierce claims that he was denied a promotion from part-time to full-time status in his current position. The charge provides ample notice of such a claim. At a minimum, the promotion claim is reasonably related to the allegations in Pierce's charge.

## III. Conclusion

Pierce's motion for appointment of counsel is denied and UPS's motion to dismiss is granted, both without prejudice. Pierce may file an amended complaint that addresses the pleading deficiencies outlined in this opinion. If he chooses to do so, he should attach a copy of

11

his EEOC right-to-sue notice, specify the disability he believes was the basis of his firing and non-promotion, and allege, to the extent he truthfully can, that he was qualified for both part- and full-time employment in his position with UPS. Pierce may also move again for appointment of counsel. Such a motion should include the following: (1) a statement to the effect that his financial situation has not improved since he filed his application to proceed *in forma pauperis*; (2) a description of the disability Pierce believes was the cause of his firing and non-promotion (and any other material or argument that supports his claims); and (3) a description of Pierce's attempts to obtain private counsel or how circumstances prevented him from making such efforts.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: May 9, 2002